|  |  |
|---|---|
| Angelo Del Santo<br>vs.<br>Thomas R. Lewis, Jr. | No. 84279. |

October 27, 1931.

BLODGETT. P. J. Heard without the intervention of a jury.

Action to recover for materials and labor used in the construction of a tennis court in East Providence.

The contract for this work was originally entered into by the What Cheer Tennis Club and John Brooks. In June, 1930, plaintiff negotiated with said Brooks relative to building same and agreed to furnish 350 yards of clay to be delivered on the premises. The price agreed on was $750 and, in addition,

Brooks agreed to pay $150 for leveling same on the court.

Plaintiff testified Brooks was to furnish a surveyor to give the level grade lines; that the surveyor gave him the level grade lines; that when the work of spreading the clay was finished, it was found the court was 18 inches out of level; that Brooks then agreed to pay the cost price of the clay needed to bring same to level and 10% profit; that he (plaintiff) hauled the material and furnished the labor; that on the morning he (plaintiff) started the extra fill, Brooks gave him $100; that on June 22nd Brooks gave him a check for $500; that the next morning he presented the check at the bank and found there were no funds to meet it; that defendant came to the court that afternoon and that he told defendant that he had worked approximately two days and had used up $125 and could not haul any more fill without order from Brooks; that defendant said: "Don't stop. We have got to have these courts for the Fourth of July and the time is very short. You go ahead and keep on hauling the fill and keep on working and I will see you get paid for it;" that the following Tuesday Brooks gave him the $500 check (mentioned above); that he presented the check for payment twice and payment was refused; that he then saw defendant and that defendant told him he had paid Brooks for the job in full, $1000 when the contract was signed and $500 when the clay was delivered; that he then told defendant that he (plaintiff) would have to stop and that defendant then said: "We have players coming from all over the country for the four days' tournament on the Fourth of July. You keep on working and I will pay you and I will get whatever money I paid Brooks back;" that he submitted a bill to defendant who made no criticism at that time; that on a subsequent occasion Lewis (defendant) advanced $350 for a pay roll;

that on another occasion he paid one Borge $250, being the amount due for clay delivered to plaintiff under a contract with Borge; that defendant also paid one Angelo $100 for trucking and paid him (plaintiff) $150 on another contract for work about the club-house; that the balance due under the contract was $979.60 with interest.

It appears upon the record (p. 17) that defendant refused to sign an agreement in writing to pay for this contract and told plaintiff his (defendant's) word was better than any agreement.

There is further testimony that plaintiff, before suing Lewis (defendant) brought a lien action, and also commenced proceedings against Brooks.

Robert Del Santo, a brother, testified to hearing the defendant (Lewis) promise to pay Angelo for all the work on the courts.

Antonio Alfano testified he was employed by plaintiff; that he saw defendant at the job; that he did not see Brooks; that he hauled clay; that Lewis (defendant) had whole say there; that Brooks failed to come down with the pay-roll money one Saturday and that Lewis paid $350 to the men; that he heard Angelo tell Lewis that he would have to stop work and that Lewis told plaintiff not to stop work and that he (Lewis) would pay for it himself.

Joseph De Valsi, a workman, also testified that Lewis promised to pay for the work. Leonard Campanelli, a workman, testified to the same effect.

This concluded testimony for plaintiff.

The defense was that Lewis (defendant) in all that he did was acting simply as agent for the What Cheer Tennis Club. A contract between Brooks and the club was offered as evidence, and defendant testified all that he did was done as such agent; that he had paid Brooks the amount of the contract, viz.: $1,550; that he never en-

tered into any personal contract with Del Santo (plaintiff); that upon advice of counsel he refused to sign an agreement (Dcft's Ex. B) to pay Del Santo; that he did not agree to pay for the clay used for reconditioning the courts; that he at one time paid Del Santo (plaintiff) something on Mr. Brooks' bill; that, regarding the payment of $350 to the men, he notified Brooks that the check for $500 was "no good;" that Brooks promised to see him that evening and make good the check, but failed to do so; that another member of the club said he would send down some money, and that this sum together with what he (Lewis) had in his pocket was enough to help Del Santo out; that he told Brooks he (Lewis) would pay the amount and hold him (Brooks) responsible; that he did so and Brooks afterwards paid him; that he never promised in presence of the men that he would pay for the work.

In cross-examination defendant testified to certain other payments he had made to men working upon the job for Del Santo (plaintiff); that he never told plaintiff that he (def't) was agent for the club as plaintiff knew it; that plaintiff told him the men were not coming back and so he paid the $350 but that he (def't) never asked them to come back; that after the courts were finished, he further paid plaintiff $150 for work about the club.

John S. Brooks testified for defendant that he entered into this contract with the What Cheer Tennis Club and the contract was signed in behalf of the club by Lewis; that Del Santo (plaintiff) was a sub-contractor.

The testimony of Brooks does not throw much light on the question whether Lewis (defendant) made a separate agreement to pay for the work, as he was not present at the time of any payments by defendant, or when the alleged promises were made. It appears also from the record that Brooks was building houses at the time the work was being done upon the tennis courts and was also building a grandstand for the coming tournament of July Fourth.

Lewis, the defendant, was much interested in the club and evidently anxious to have the work finished for the coming tournament, and at the time plaintiff was working there in June, there was not much time left. There is no doubt he was acting as an agent for the club, and the Court can not understand in all the transactions with plaintiff, and the payment of considerable sums to the plaintiff, or in his behalf, why he failed to directly and plainly notify plaintiff of this fact. Lewis himself says he did not do so because plaintiff knew this to be the fact. Lewis is a business man engaged in manufacturing jewelry and appeared to the Court to be honest in the giving of his testimony. He was dealing with a man who was furnishing material and labor and attempting to complete the job in a short time. Lewis must have realized, at the time he volunteered to make these payments, that he was in a critical situation that might involve him personally. He says himself that he told plaintiff he would hold Brooks responsible to make good the $500 check and that Brooks did afterwards make it good. The plaintiff denies any such conversation. When plaintiff presented him with an agreement in writing to assume payment for the work, Lewis did not then seize the opportunity to clear up the matter but took the agreement to his attorney for advice and then refused to sign. In view of the danger that the work would not be finished in time, and that Brooks had failed to make good the $500 check, he compromised his position in failing then and there to make clear to the plaintiff that he, Lewis, would not be personally responsible, and led plaintiff to put further

labor and material into the construction.

There are certain acts of the plaintiff which are a matter of record, viz.: that before bringing this action against Lewis, he (plaintiff) filed a lien petition and also brought action against Brooks to recover this bill, and it is argued that these efforts show that he did not rely on the alleged promise of Lewis.

Plaintiff says all this was done at the request of Lewis.

In view of the direct testimony of plaintiff, as corroborated by his witnesses, and the compromising acts of the defendant and his failure to make the situation clear when opportunity was given, the Court is of the opinion plaintiff should recover in this action.

Decision for plaintiff for $979.60 and interest from date of commencement of action, and costs.

For plaintiff: William H. Foley.

For defendant: James M. Stockett.